UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20574-CR-LENARD(s)

UNITED STATES OF AMERICA

vs.

DAVID PACKOUZ,

      **Defendant.**
_____/

## FACTUAL PROFFER

The United States of America, the defendant, and the defendant's counsel agree that, if this case went to trial, the Government would prove the following facts, among others, beyond a reasonable doubt:

1. AEY, Inc. ("AEY") was incorporated in the State of Florida, with its principal place of business in Miami Beach. In 2006 and 2007, AEY was engaged in the business of procuring arms and ammunition.

2. During this time period, Efraim Diveroli ("DIVEROLI") was the President and owner of AEY and managed and directed the business operations of AEY. David Packouz ("PACKOUZ") was a Director and Vice-President of AEY. Alexander Podrizki ("PODRIZKI") was an agent of AEY stationed in Tirana, Albania. Ralph Merrill ("MERRILL") was an agent of AEY and a business associate of DIVEROLI who provided financial and managerial assistance to AEY.

3. On January 26, 2007, the United States Army Sustainment Command, a component of the United States Department of the Army, a component of the United States Department of

Defense, awarded a prime contract, designated number W52P1J-07-D0004 (hereinafter referred to as the contract), to AEY to provide various types of ammunition, including, among other types, 7.62x54mm and 7.62x39mm rounds, to the Islamic Republic of Afghanistan. The contract was valued at $298,000,000. Among other things, the contract contained a "Prohibition on Acquisition of United States Munitions List Items from Communist Chinese Military Companies", which prohibited AEY from delivering items acquired "directly or indirectly" from Communist Chinese military companies.

4. AEY entered into a subcontract with a foreign company to procure rounds of 7.62x54mm and 7.62x39mm ammunition to fulfill that portion of the contract. AEY's subcontractor obtained these rounds from Albania's Military Export and Import Company ("MEICO"). The ammunition provided by MEICO was manufactured by factories in the People's Republic of China ("PRC") between the years 1958 and 1974. The ammunition was to be sent directly from Albania to Afghanistan on flights arranged by AEY.

5. In order to save money on shipping costs, representatives of AEY decided to remove the heavy wooden crates in which the tins of ammunition were packaged. In April 2007, DIVEROLI sent PODRIZKI to Albania as AEY's agent to oversee the removal of the wooden crates and the loading of the ammunition onto the cargo planes. In the process, PODRIZKI discovered that the ammunition being supplied by MEICO was manufactured in the PRC.

6. As described in Overt Act 5 of the Superseding Indictment, PODRIZKI took photographs of the ammunition containers with Chinese markings and sent them, via email, in interstate and foreign commerce to PACKOUZ. PACKOUZ showed the photographs to DIVEROLI.

7. DIVEROLI, PACKOUZ, PODRIZKI, and MERRILL understood that providing

ammunition manufactured in the PRC would violate the contract's prohibition on delivering items acquired indirectly from Communist Chinese military companies. Accordingly, DIVEROLI, PACKOUZ, PODRIZKI, and MERRILL discussed with each other and with others at AEY ways to avoid this prohibition.

8. One proposed solution was to see whether the United States Department of State would allow AEY to supply ammunition manufactured in the PRC. As alleged in Overt Acts 7, 9, 10, 11, 12 and 13 of the Superseding Indictment, DIVEROLI corresponded with the State Department on this issue via emails sent in interstate commerce between April 20 and 24, 2007. In response, the State Department informed DIVEROLI that AEY would not be allowed to supply ammunition manufactured in the PRC. DIVEROLI, PACKOUZ, PODRIZKI, and MERRILL shared the emails with each other.

9. DIVEROLI, PACKOUZ, PODRIZKI, and MERRILL also discussed with each other and with others at AEY ways to conceal the fact that the ammunition was manufactured in the PRC. As described in Overt Act 8, PODRIZKI sent an email in interstate and foreign commerce to PACKOUZ suggesting that the metal cases would have to be painted over. As also described in Overt Act 14, MERRILL sent an email in interstate commerce to DIVEROLI and PACKOUZ suggesting that the Chinese markings could be scraped off of the crates.

10. DIVEROLI, PACKOUZ, PODRIZKI, and MERRILL and others at AEY ultimately chose to conceal the ammunition's Communist Chinese origin by having the ammunition removed from the wooden crates and metal tins that bore the Chinese markings, disposing of papers containing Chinese markings, and repacking the ammunition in cardboard boxes.

11. Having devised a method to conceal that the ammunition was manufactured in the

PRC, representatives of AEY decided to use this issue as leverage to secure a lower price for the ammunition from its subcontractor and MEICO. As referenced in Overt Act 15, on May 16, 2007, MERRILL, on behalf of AEY, sent an email in interstate and foreign commerce to AEY's subcontractor to negotiate a lower price due to shipping costs, the origin of the ammunition, and the repackaging. As referenced in Overt Act 16, on May 23, 2007, DIVEROLI traveled to Albania. There, DIVEROLI and PODRIZKI met with representatives of MEICO and negotiated a new price for the ammunition. As referenced in Overt Act 17, on May 26, 2007, DIVEROLI sent an email in interstate and foreign commerce to PACKOUZ and MERRILL confirming that a lower price for the ammunition had been negotiated.

12. Beginning at least as early as June 21, 2007, and continuing through at least as early as October 31, 2007, AEY delivered, in fulfillment of the contract, approximately 35 shipments containing a total of 90 million rounds of ammunition that it had acquired indirectly from a Communist Chinese military company through MEICO. All of these rounds of ammunition had been manufactured in the PRC and repacked according to the scheme discussed above and in the Superseding Indictment.

13. In documents accompanying each of these shipments, DIVEROLI, on AEY's behalf, falsely certified that the ammunition being furnished conformed in all respects with the contract requirements and that the manufacturer and point of origin of the ammunition was MEICO in Tirana, Albania.

14. In return for these shipments, AEY submitted invoices that caused the Department of the Army to make payments to AEY totaling approximately $10,331,736.44. These payments were made via electronic transfers of funds into bank accounts of AEY.

15. On August 23, 2007, agents executed a search warrant at AEY's place of business in Miami Beach, Florida. Within two weeks of the search, PACKOUZ and PODRIZKI contacted the federal authorities and were debriefed about the contract. Both PACKOUZ and PODRIZKI revealed that AEY had been supplying Chinese ammunition under the contract. At the time that they came forward, AEY had delivered shipments containing approximately $6.5 million worth of Chinese ammunition.

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

Date: 5/26/09    By: _____
                 ELOISA D. FERNANDEZ
                 ASSISTANT UNITED STATES ATTORNEY

Date: 5/26/09    By: _____
                 JAMES M. KOUKIOS
                 ASSISTANT UNITED STATES ATTORNEY

Date: 5/26/09    By: _____
                 KENNETH J. KUKEC
                 ATTORNEY FOR DEFENDANT

Date: 5/26/09    By: _____
                 DAVID PACKOUZ
                 DEFENDANT