```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                  CASE NO. 08-20574-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,          Miami, Florida

 5                  Plaintiff,          January 13, 2011

 6           vs.                        4:21 p.m. to 4:52 p.m.

 7   DAVID PACKOUZ,

 8                  Defendant.          Pages 1 to 22
     _____

 9

10                      SENTENCING HEARING
           HELD BEFORE THE HONORABLE JOAN A. LENARD,
11                 UNITED STATES DISTRICT JUDGE

12
     APPEARANCES:
13

14   FOR THE GOVERNMENT:      ADAM SCHWARTZ, ESQ., and
                              FRANK TAMEN, ESQ.
15                            ASSISTANT UNITED STATES ATTORNEYS
                              99 Northeast Fourth Street
16                            Miami, Florida 33132

17
     FOR THE DEFENDANT:       KENNETH J. KUKEC, ESQ.
18                            Two South Biscayne Boulevard
                              Suite 2600
19                            Miami, Florida 33131

20
     FOR US PROBATION:        SARA GARCIA
21

22   REPORTED BY:            LISA EDWARDS, CRR, RMR
                             Official Court Reporter
23                           400 North Miami Avenue
                             Twelfth Floor
24                           Miami, Florida 33128
                             (305) 523-5499
25
```

```
 1              THE COURT:  United States of America versus David

 2   Packouz, Case No. 08-20574.

 3              Good afternoon, counsel and Probation.

 4              State your appearances, please, for the record.

 5              MR. TAMEN:  Good afternoon, your Honor.

 6              Frank Tamen and Adam Schwartz on behalf of the United

 7   States.

 8              THE COURT:  Good afternoon.

 9              MR. KUKEC:  Good afternoon, your Honor.

10              Kenneth Kukec on behalf of Mr. Packouz, who is making

11   his way to counsel table.

12              THE COURT:  Good afternoon.

13              THE PROBATION OFFICER:  Good afternoon, your Honor.

14              Sara Garcia with Probation.

15              THE COURT:  Good afternoon as well again.

16              Mr. Packouz is set for sentencing today.

17              Mr. Packouz, have you read the revised advisory

18   presentence investigation report?

19              THE DEFENDANT:  I have.

20              THE COURT:  And have you and your attorney discussed

21   the revised advisory presentence investigation report?

22              THE DEFENDANT:  Yes, we have.

23              THE COURT:  My examination of the file indicates that

24   neither side filed objections to the revised advisory

25   presentence investigation report.  The Defendant filed a
```

```
1    sentencing memorandum and the Government filed a motion for

2    reduction of sentence pursuant to 5K1.1.

3             Is that correct?

4             MR. KUKEC:  That's correct, your Honor.

5             MR. TAMEN:  Yes, your Honor.

6             THE COURT:  And does the Government make the motion

7    for the third level off under 3E1.1?

8             MR. TAMEN:  Yes, we do.

9             THE COURT:  That motion is granted.

10            The Court will adopt the factual findings and

11   guideline applications as contained in the revised advisory

12   presentence investigation report.

13            Before going further, I would ask counsel to review

14   with me the major calculations in the revised advisory

15   presentence investigation report.

16            The offense level is 19.  The criminal history

17   category is Roman numeral I.  The advisory guideline range is

18   30 to 37 months' incarceration, two to three years' supervised

19   release; 6,000 to a 60,000-dollar fine; restitution, joint and

20   severally owed, in the amount of $149,279.28; and $100 special

21   assessment.

22            Is that correct in its totality?

23            MR. KUKEC:  That's correct, your Honor.

24            MR. TAMEN:  Yes, your Honor.

25            THE COURT:  Mr. Packouz, you are in court today to
```

1  receive your sentence.  Before that happens, I must ask you if

2  there's any legal cause as to why the sentence of the law

3  should not be pronounced upon you.

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  No legal cause having been shown as to why

6  sentence should not be imposed, the Court will consider

7  whatever you may wish to say in mitigation.

8          Mr. Kukec, do you wish the Government to proceed first

9  with its 5K1.1 motion or do you want to proceed with allocution

10  first?

11          MR. KUKEC:  We would prefer the Government to proceed,

12  your Honor.

13          THE COURT:  Mr. Tamen?

14          MR. TAMEN:  Yes, Judge.

15          Mr. Packouz was actually the first individual in the

16  group that was named in this indictment to come forward on

17  August 30th of 2007, which is just within a week of the

18  Government executing a search warrant at AEY's business

19  premises.

20          He came forward and met with the agents and provided

21  them with complete information about the fact that AEY was

22  delivering Chinese ammunition disguised as Albanian ammunition

23  under the contract with the Department of Defense, which was

24  not a matter that was at that point known to the Government.

25  So he basically gave up the scheme.

1          He was also instrumental in leading his friend and

2     Co-Defendant, Alexander Podrizki, to come forward and, also, to

3     cooperate.

4          Mr. Packouz has met innumerable times with prosecutors

5     and agents on this case, about 30 times, since he came forward.

6          I got into this case late.  I was only assigned to the

7     prosecution team last summer.  I was assigned the role of doing

8     the direct examination of Mr. Packouz.

9          I met with him at length and found him from my initial

10    encounters to be extremely forthright, having a very detailed

11    recollection of what he and everybody else had done in this

12    case and being very articulate in explaining things.

13         I gave him a very large stack of e-mails that had been

14    obtained by subpoena and search warrant to go through, which I

15    told him would be part of the -- a subject matter of his

16    testimony, which he did.

17         I met with him a couple of times in preparation for

18    trial.  And the Court, of course, is familiar with his

19    effectiveness at trial as a witness, since you heard him in

20    full twice.

21         I would describe Mr. Packouz as being one of the most

22    important witnesses we were able to present at this trial

23    because he was able to take a dry record of thousands of pages

24    of e-mails and explain what they meant, explain what was going

25    on behind the scenes that generated these e-mails and help

1  explain Robert -- Ralph Merrill's involvement in the scheme

2  using e-mails as illustration and support for his testimony.

3       So I think Mr. Packouz deserves a great deal of credit

4  for assisting the Government in obtaining a conviction of Ralph

5  Merrill, who was fairly adept at keeping himself out of the

6  limelight, behind the scenes, off the radar screen, so to

7  speak, as exemplified by some of the initial fraudulent

8  submissions to the Government in which he identified himself as

9  a past business partner of AEY or as an investor without

10 revealing the fact that he was, in fact, a partner in the

11 contract.

12      So Mr. Packouz's testimony, I think, was necessary to

13 illustrate to the jury the depth and extent of Ralph Merrill's

14 involvement and was a major factor in Mr. Merrill's conviction,

15 which I think was a justified and important conviction,

16 considering the fact that Mr. Merrill's very experienced in the

17 arms business and knew a lot about how to accomplish the

18 objectives, first, of the original intent of the people

19 involved to fulfill the contract and then, when the intentions

20 turned criminal in nature, he became fairly adept and provided

21 a lot of insight and information on how to fulfill the contract

22 in violation of the law -- or make it appear they were

23 fulfilling the contract.

24      And his conviction was an important one for the

25 Government for those reasons.

1          In all of my discussions with Mr. Packouz, he has

2    never tried to minimize his involvement.  He has never tried to

3    exaggerate anybody else's involvement.  I believe he's been

4    completely forthright and truthful.

5          I have read through his presentence investigation

6    report and his background has been a bit troubled on a number

7    of occasions.

8          I've also read the large number of letters from

9    friends and supporters and people who know him who speak highly

10   of him.

11         Combining that with my own personal dealings with him

12   in preparing him for trial and his trial testimony, I think

13   that Mr. Packouz has learned a lesson that he's not likely to

14   forget, and I don't think that any incarceration is needed to

15   serve any of the ends of the statute at 18, USC, 3553.

16         For those reasons, I recommend that the Court impose a

17   sentence of 14 months of probation, half of which would be

18   spent on home confinement.

19         I also recommend that, as part of the conditions of

20   probation, that he be required to go through any substance

21   abuse counseling that his probation officer may feel is

22   appropriate.

23         He apparently has been drug-free for the entire time

24   that he's been out on bond.  But given the seriousness of some

25   of his marijuana habit before that and his experimentation with

8

 1   other drugs, I think it probably would be wise to reinforce his

 2   abstinence with some additional counseling.

 3          So that's my recommendation, is 14 months of

 4   probation, seven of which would be spent under home

 5   confinement.

 6          THE COURT:  Yes.

 7          MR. KUKEC:  Thank you, your Honor.

 8          I think that the Government has very adequately set

 9   forth the extent of Mr. Packouz's cooperation.

10          There are only a couple of matters that I wish to

11   highlight, one of which is that, even before the search and

12   seizure, which essentially ended the conspiracy in this case,

13   Mr. Packouz had cut off his relationship with Mr. Diveroli.

14          He had left AEY, was no longer involved in the

15   conspiracy.  That happened over a month -- almost two months

16   before the conspiracy ended.

17          Immediately after that, that is, after the search of

18   AEY, Mr. Packouz came forward.  He was the first person -- I

19   think, in some measure, he was responsible as well for

20   Mr. Podrizki coming forward.  He was certainly responsible for

21   the Co-Defendant, Mr. Diveroli's plea.

22          The e-mails that were most damaging to Mr. Packouz

23   himself he voluntarily turned over even before they were

24   required by subpoena.  He's been very forthright.

25          Even ten months before the indictment was returned, he

```
 1    began his cooperation.  He met several times, went through

 2    debriefings.  I think the information that he supplied was, in

 3    fact, used before the grand jury and was responsible for the

 4    indictment of the entire conspiracy.

 5           He's a changed man.  As the PSI reflects, there was

 6    some youthful experience with marijuana.  Since he has been

 7    under supervision, I think he has had 28 random drug tests that

 8    were returned clean.

 9           He's an upstanding member of the community.  Parents,

10    a spouse, a brother, a child.  He has maintained steady

11    employment while he's been out.

12           We have submitted a couple of dozen letters, which I'm

13    sure, based upon my past experience with the Court, I know the

14    Court has reviewed very carefully.

15           THE COURT:  I have.

16           MR. KUKEC:  There are members of the community and

17    family here.  We could call several witnesses.  However, it is

18    an emotional matter.  It would be traumatic for some of them to

19    testify.

20           Mr. Packouz wishes to address the Court, but he

21    doesn't really want to put his family and the community members

22    through having to do that themselves.

23           If the Court, however, has any questions based upon

24    the letters that were submitted, those folks would be happy to

25    answer them for them.
```

1          But based upon the joint recommendation, I think that

2    that would be appropriate.  To the extent that it's a short

3    period of probation, we should keep in mind that, for

4    practically three years now, Mr. Packouz has been under

5    supervision by the Probation Department while he's been out on

6    bond and he has been a model person to supervise.  I think that

7    that's all reflected in the record.

8          I would ask the Court very respectfully to hear the

9    contrition that Mr. Packouz is about to express and to follow

10   the joint recommendation of the parties with regard to the

11   sentence.

12         THE COURT:  Yes, Mr. Packouz.  Is there something you

13   wish to say, sir?

14         THE DEFENDANT:  Yes, your Honor.

15         First, your Honor, I would like to thank you for

16   permitting me to speak, to address the Court before sentencing

17   me.

18         I would like to apologize to the Court and the

19   Government for the crime I committed.  I would also like to

20   apologize to my parents and to my wife for the embarrassment

21   and the stress and the heartache that I've caused, especially

22   when I was not raised to conduct myself in such a manner and

23   nor would I want my actions to be an example for my 4-year-old

24   daughter.

25         I also sincerely apologize to Alex Podrizki for

1    involving him.  I'm very sorry.

2              I hope that each of you forgives me with time.

3              During the past three and a half years, I have worked

4    hard to look at myself and what happened and I've undertaken

5    steps to make changes.

6              For most of this time, I worked through the Talmudic

7    University with Helping Hands, a nonprofit charity to help feed

8    the needy.  I have returned to school and I am studying towards

9    a mechanical engineering degree.

10             It is my intention and promise to the Court and the

11   Government, as well to my family, that I will never violate any

12   laws.  I will strive to be a good man and a good citizen in the

13   community, a good son, husband and father.

14             In retrospect, this may have been one of the best

15   things to happen to me.  It taught me lessons that many people

16   go through their entire lives never learning.

17             It taught me that there are no shortcuts to real

18   accomplishments.  Success is more about what you can give than

19   what you can take.

20             It taught me that, compared to the real things in

21   life, money is really just not that important.  Nothing is

22   worth losing your dignity and integrity.  Nothing is worth

23   losing your best friend.  Nothing is worth damaging your

24   family.  Most of all, nothing is worth the risk of missing your

25   daughter grow up.  Some things money can never replace.

1          Thank you, your Honor.

2          THE COURT:  If you would, stand with your client,

3    please.

4          I heard Mr. Packouz testify twice in this case.  Both

5    times that he came forward and testified at trial, I found his

6    testimony to be forthright and honest and complete.

7          It was certainly not an easy task for him.  And he was

8    cross-examined by two different attorneys as his Co-Defendant,

9    Ralph Merrill, changed attorneys for the second trial.

10         I wondered, as I listened to him testify, because my

11   estimation of Mr. Packouz -- I don't know Mr. Podrizki as well,

12   as I didn't hear him testify.

13         But my estimation of Mr. Packouz was that he was a

14   very bright young man.  And how does such a bright young man

15   become involved in this type of criminal conduct?

16         And when I spent a number of hours reviewing his

17   revised advisory presentence investigation report, it explained

18   some things and the mystery in some ways grew larger.

19         Certainly both Mr. Podrizki and Mr. Packouz come from

20   honorable, wonderful families who are both dedicated to their

21   religion and their country, who I'm sure, I have no doubt, have

22   spent hours and days and years teaching Mr. Packouz not only

23   the tenets of his religion, but the responsibilities that he

24   must endure and act on as a young man and as an adult.

25         Somewhere that message got muddled and, instead of

```
 1   going forward in a productive way, it seemed as if you really
 2   fell short of yourself for quite a bit of time.  A large
 3   portion of that I attribute to your involvement with drugs and
 4   alcohol.
 5        And rather than going forward with the importance of
 6   education and knowledge and concern about helping people and
 7   doing something productive for yourself and others, it all
 8   became about the easy buck, the next high.  It made me very sad
 9   to read that.
10        I do believe that you have changed, that this was
11   quite an eyeopener, and certainly it will have lasting effects
12   on you.  You now go forward in life with a felony conviction --
13   a federal felony conviction.
14        I know that you have and you are aware that you have
15   caused much pain to your family, and I'm sure they have
16   struggled mightily in confronting and questioning how could
17   this have happened.
18        It seemed to me that, for a period of time, you
19   doubted yourself and allowed yourself to drift in a very wrong
20   direction.  And perhaps in some ways this was a good eyeopener
21   for you.
22        We hope that, as a result of these activities, the
23   harm was minimized and certainly a change away from the kind of
24   life that you were living, where even doing business, it was
25   okay to be high.
```

```
 1              It was both startling and stunning to hear that, on

 2    such an important business venture, you very forthrightly

 3    testified that there were times that you were all high on

 4    cocaine and marijuana, fulfilling a contract to provide

 5    ammunition for the United States.  Certainly not responsible

 6    actions on your part.

 7              But I'm going to grant the Government's motion for a

 8    reduction of sentence pursuant to 5K1.1.  I find that the

 9    Defendant has provided substantial assistance in the

10    investigation and prosecution of other persons involved in

11    criminal conduct.

12              I agree with the representations made by your counsel

13    and by Mr. Tamen, Government counsel, that your testimony was

14    necessary and important and provided many missing links for the

15    jury to understand the full picture of what happened at AEY and

16    what happened in the supplying of Chinese ammunition, how those

17    decisions were made, who made them, how extensive it was and

18    how much activity was accomplished to try and hide that fact

19    from the United States Government.

20              As Mr. Tamen indicated, you were the first individual

21    to come forward.  In fact, I believe that the search warrant

22    that was executed on AEY did not even involve the Chinese

23    ammunition.  It was for other matters.  After that search

24    warrant, you came forward and provided complete information on

25    the supplying of the illegal ammunition.
```

1          Certainly this was not an area that was known or known

2    completely by the Government.

3          In addition, as Government counsel indicated and your

4    attorney also indicated, you were pivotal in two of your

5    Co-Defendants entering pleas of guilty, including the lead

6    Defendant, Efraim Diveroli.

7          And you spent a lot of time with the Government

8    preparing your testimony, reviewing e-mails, explaining to them

9    as they made determinations in the preparation and presentation

10   of their case.

11         And certainly there were some pitfalls for the

12   Government as this case went along.  I believe that they first

13   intended to present the testimony of Efraim Diveroli.  I think

14   they did.  And then Mr. Diveroli got arrested in northern

15   Florida.

16         I was not surprised that, after that, they no longer

17   intended to call him, which was, in fact, an issue that was

18   going to be litigated before me in terms of some medical

19   records and issues regarding his testimony.

20         At that time, the Government represented to the Court

21   that Mr. Diveroli was no longer a witness.  And so their

22   primary witness was you.

23         And you certainly rose to that occasion twice.  You

24   were very informative before the jury.  You explained much that

25   needed explaining and were a very pivotal part of the

1   Government's presentation.

2          I am going to accept the recommendation of both the

3   Government and your counsel for a nonincarcerative sentence and

4   a sentence of probation with home confinement.  I find that it

5   does meet the factors under 3553(a) after considering what is

6   the appropriate reduction concerning your substantial

7   assistance.

8          The Court has considered the statements of the

9   parties, the revised advisory presentence investigation report,

10  which contains the advisory guidelines, and the statutory

11  factors set forth in Title 18, United States Code,

12  Section 3553(a)(1) through (7).

13         It is the finding of the Court that the Defendant is

14  not able to pay a fine as well as restitution.  Restitution is

15  mandatory.  And, therefore, no fine shall be imposed.

16         Pursuant to the Sentencing Reform Act of 1984, it is

17  the judgment of the Court that the Defendant, David Packouz, is

18  hereby placed on probation for a period of 14 months.

19         It is further ordered that the Defendant shall pay

20  joint and several restitution with the Co-Defendants in this

21  case in the amount of $149,279.28.

22         While on probation, the Defendant shall not commit any

23  federal, state or local crimes; he shall be prohibited from

24  possessing a firearm or other dangerous device; he shall not

25  possess a controlled substance; he shall cooperate in the

1   collection of DNA and shall comply with the standard conditions

2   of probation.

3            While on probation, the Defendant shall pay

4   restitution at the rate of 10 percent of monthly gross earnings

5   until such time as the Court may alter that payment schedule in

6   the interest of justice.

7            The United States Probation Office and the United

8   States Attorney's Office shall monitor the payment of

9   restitution and report to the Court any material change in the

10  Defendant's ability to pay.

11           These payments do not preclude the Government from

12  using any other anticipated or unexpected financial gains,

13  assets or income of the Defendant to satisfy the restitution

14  obligations.

15           Restitution shall be made payable to the clerk, United

16  States Courts, forwarded to the United States Clerk's Office,

17  Attention:  Financial Section, 400 North Miami Avenue,

18  Room 8N09, Miami, Florida, 33128.

19           Restitution will then be forwarded by the Clerk of the

20  Court to the following victim:

21           United States Army Sustainment Command Headquarters,

22  Rock-AMSAS-GC, Rock Island, Illinois, 61299.

23           In addition to the standard conditions of probation,

24  the Defendant shall comply with the following special

25  conditions:

1          The Defendant shall participate in the home detention

2     electronic monitoring program for a period of seven months.

3     During this time, he will remain at his place of residence

4     except for employment and other activities as approved in

5     advance by the United States probation officer.

6          The Defendant shall maintain a telephone at his place

7     of residence without call forwarding, call waiting, a modem,

8     caller ID, or call back, call block services during this

9     period.

10          He shall wear an electronic monitoring device and

11     follow electronic monitoring procedures as specified by the

12     United States probation officer.  He shall pay the cost of

13     electronic monitoring at the prevailing rate each day or in

14     accordance with his ability to pay.

15          The Defendant shall participate in an approved

16     treatment program, if appropriate, for drug and/or alcohol

17     abuse and abide by all supplemental conditions of treatment.

18          Participation may include inpatient or outpatient

19     treatment.  The Defendant will contribute to the cost of

20     services rendered by means of a copayment based upon ability to

21     pay or availability of third-party payment.

22          The Defendant shall provide complete access to

23     financial information, including disclosure of all business and

24     personal finances, to the United States probation officer.

25          The Defendant shall not apply for, solicit or incur

1   any further debt, included, but not limited to, loans, lines of

2   credit or credit card charges either as a principal or

3   cosigner, as an individual or through any corporate entity

4   without first obtaining written permission from the United

5   States probation officer.

6           The Defendant shall obtain prior written approval from

7   the Court before entering into any self-employment.  The

8   Defendant shall not own, operate, act as a consultant, be

9   employed in or participate in any manner in any business having

10  Government contracts, including those contracts for ammunition

11  or similar related concern during the period of probation.

12          It is further ordered that the Defendant shall pay to

13  the United States a special assessment of $100, which shall be

14  due immediately.

15          Does the Government have a motion to make regarding

16  the remaining counts?

17          MR. TAMEN:  Yes.  The United States moves to dismiss

18  Counts 37 through 46 and, also, Counts 73 through 76 and the

19  forfeiture allegations as to Mr. Packouz.

20          THE COURT:  That motion is granted.

21          Mr. Packouz, it is my duty to inform you, sir, that

22  you have 14 days with which to appeal the judgment and sentence

23  of this Court.

24          Should you desire to appeal and be without funds with

25  which to prosecute an appeal, an attorney will be appointed to

1    represent you in connection with that appeal.

2            Should you fail to appeal within that 14-day period,

3    it will constitute a waiver of your right to appeal.

4            It is also my duty to elicit from counsel from both

5    sides fully articulated objections to the Court's finding of

6    facts and conclusions of law as announced at this sentencing

7    hearing and to further elicit any objections which either side

8    may have to the manner in which sentence was imposed in this

9    case.

10           Are there any objections from the Government?

11           MR. TAMEN:  No, your Honor.

12           THE COURT:  From the Defendant?

13           MR. KUKEC:  No, your Honor.  No objections.

14           Your Honor, with regard to the conditions of

15    probation, there's just two things I'd like to add very

16    quickly.

17           One, Mr. Packouz is a licensed massage therapist and

18    is, therefore, self-employed.  If he could be allowed to

19    continue in that employment.

20           THE COURT:  Any objection?

21           MR. TAMEN:  No objection.

22           THE COURT:  He'll be allowed to continue his

23    employment as a self-employed massage therapist.

24           MR. KUKEC:  Secondly, your Honor, as Mr. Packouz said,

25    he is pursuing a degree.  He has been enrolled while he has

```
 1    been released on bond.  He is currently enrolled in school in

 2    an engineering program, I think.  If he would be allowed to

 3    continue with the schooling.

 4              THE COURT:  No objection?

 5              MR. TAMEN:  No objection.

 6              THE COURT:  I think it would be a good idea for him

 7    and I will order it.

 8              MR. KUKEC:  Thank you, Judge.

 9              THE COURT:  Yes.

10              MR. KUKEC:  Your Honor, as part of that, because his

11    wife also works, he needs to drop off his daughter at daycare.

12              THE COURT:  He can work all that out with Probation.

13    I don't foresee that there's going to be any problem with him

14    dropping the baby off at daycare or doing his work as a massage

15    therapist or going to school.

16              He's going to have other -- you know, there will be

17    other limitations while he's on home confinement, but he'll be

18    able to accomplish all that he needs to do to take care of his

19    family.

20              MR. KUKEC:  Thank you, Judge.

21              THE COURT:  Thank you.  We're in recess in this

22    matter.

23              I only want to see you back if you're doing well,

24    Mr. Packouz.

25              THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  We're in recess for the day.

2          (Proceedings concluded.)

3

4                    C E R T I F I C A T E

5

6      I hereby certify that the foregoing is an accurate

7  transcription of the proceedings in the above-entitled matter.

8

9

10  _____        /s/Lisa Edwards_____
         DATE            LISA EDWARDS, CRR, RMR
11                       Official United States Court Reporter
                         400 North Miami Avenue, Twelfth Floor
12                       Miami, Florida 33128
                         (305) 523-5499

13

14

15

16

17

18

19

20

21

22

23

24

25